IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CARMEN ZAUKAR, et al.,<br><br>            Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>            Defendant. | Case No. 3:20-cv-0163-HRH |

O R D E R

Motions in Limine[1]

Defendant United States of America first moves in limine to exclude any testimony related to the standard of care offered by plaintiffs' retained expert witness Dr. Barry Schifrin.[2] This motion is opposed.[3] Second, the United States moves in limine to exclude plaintiffs' birth animation videos and slides.[4] This motion is opposed.[5] Third, the United States moves in limine to exclude slides prepared by plaintiffs' expert witness Dr. Luke

---

[1] Docket Nos. 23, 24, 26, and 27.

[2] Docket No. 23.

[3] Docket No. 28.

[4] Docket No. 24.

[5] Docket No. 29.

ORDER – Motions in Limine      - 1 -

Linscott.[6]  This motion is also opposed.[7]  Finally, the United States moves <u>in limine</u> to exclude evidence and argument regarding alleged negligence that did not cause injury.[8] This fourth motion is unopposed.[9]  The United States did not file any reply briefs.  Oral argument has not been requested on any motion and is not deemed necessary.

Background

Plaintiff Carmen Zaukar, an adult, is the natural mother of plaintiff C.Z.[10]  Plaintiff Jesse Bobby is C.Z.'s adult natural father.[11]  C.Z. is a male and a twin, and was born on July 21, 2019.[12]  Between July 20 and 21, 2019, Zaukar and C.Z. were patients of the Alaska Native Medical Center ("ANMC") and of Dr. Reinou Sybrecht Groen, M.D, .and Dr. Whitney Elliot, M.D.[13]  Various other ANMC medical practitioners also cared for Zaukar and her twins between July 20 and 21, 2019.[14]

Plaintiffs allege that prior to receipt of the medical care here at issue, Zaukar became pregnant with viable, normally developing, twin male fetuses, one of whom was

---

[6]Docket No. 26.

[7]Docket No. 30.

[8]Docket No. 27.

[9]Docket No. 31.

[10]Complaint for medical practice at 1, ¶ 2, Docket No. 1.

[11]<u>Id.</u> at 2, ¶ 3.

[12]<u>Id.</u> at 1, ¶ 2.

[13]<u>Id.</u> at 2-3, ¶¶ 7, 13, 17-18.

[14]<u>Id.</u> at 2-3, ¶ 11.

ORDER – Motions in Limine - 2 -

later born as C.Z.[15] On July 20, 2019, Zaukar arrived at ANMC for induction of labor.[16] After her first twin was born without incident at 3:28 p.m. on July 21, 2019, Dr. Groen and other ANMC staff attempted to deliver the second twin, C.Z.[17] At the time, C.Z. was in a asynclitic (head-tilted) posture.[18] Plaintiffs allege that "Dr. Groen elected to perform a vaginal birth with the aid of forceps and a forceps/traction method, rather than a C-section delivery."[19] They allege that C.Z. was ultimately delivered at approximately 6:06 p.m. and that he suffered serious brain damage during the birthing process and presentation.[20]

Plaintiffs allege that ANMC and its agents and/or employees, including Dr. Groen and Dr. Elliot, failed to perform to the requisite standards of care and skill in their respective fields of practice, specialty, or certification.[21] Specifically, plaintiffs allege that defendants made overall poor decisions, "fail[ed] to properly monitor and assess mother and child before and during the birthing process," used substandard skill and care during delivery and when using forceps, performed an untimely C-section, and provided substandard and untimely treatment following the birth.[22]

---

[15] Id. at 3, ¶ 16.

[16] Id. at 3, ¶ 17.

[17] Id. at 3, ¶¶ 18-19.

[18] Id. at 3, ¶ 20.

[19] Id. at 3, ¶ 21.

[20] Id. at 4, ¶¶ 22-23.

[21] Id. at 4, ¶ 24.

[22] Id. at 4, ¶ 25.

ORDER – Motions in Limine - 3 -

Based on these events, plaintiffs filed their complaint for negligent and reckless medical malpractice in July 2020.[23] In support of their cause of action, they have retained expert witnesses, including Dr. Barry Schifrin, Dr. Luke Linscott, and Dr. Andrew Tucker. Additionally, plaintiffs have created exhibits with assistance of a third party, including birth animation videos and correlative slides. Dr. Linscott separately created slides that contain annotations of brain imaging studies performed on C.Z.

Discussion

A. Motion in limine 1: exclusion of Dr. Schifrin's standard of care testimony.

The United States moves to exclude all of Dr. Barry Schifrin's standard of care-related testimony pursuant to Alaska Statute (AS) § 09.20.185 and Federal Rule of Evidence ("FRE") 601.[24] Dr. Schifrin holds a California medical license.[25] His license entered retired, fee exempt status in September of 2020.[26] At Dr. Schifrin's deposition, the parties reviewed and discussed an exhibit printout that contained the licensing details for his California medical license.[27] According to this exhibit and to Dr. Schifrin's correlative deposition testimony, when a license is in this status, the license holder may not practice medicine.[28] Likewise, the document containing the "licensing details" for Dr. Schifrin's

---

[23] Id. at 4-5, ¶¶ 27, 29.

[24] Motion in limine 1 at 1-2, Docket No. 23.

[25] Dr. Schifrin deposition at 2, Exhibit C, and Dr. Schifrin licensing details at 1, Exhibit D, Motion in limine 1, Docket Nos. 23-3, 23-4.

[26] Dr. Schifrin deposition at 3-5, Exhibit C, Motion in limine 1, Docket No. 23-3.

[27] Id. at 2.

[28] Id. at 5-6.

ORDER – Motions in Limine - 4 -

medical license, attached to defendant's motion as an exhibit, also states that Dr. Schifrin's license is in "retired status" and that no practice is permitted.[29]

Dr. Schifrin authored his original expert report on March 24, 2021, and his rebuttal report on June 19, 2021.[30] Dr. Schifrin was deposed on July 27, 2021, at which time he testified that his license was in retired status.[31] The parties do not dispute that Dr. Schifrin's license was in retired status at the time that he authored his reports and sat for his deposition. However, Dr. Schifrin has now reactivated his license.[32] Defendants state that plaintiffs never informed them that he had reactivated his license and that they only learned of this change by searching anew the California medical board's licensing site.[33]

The United States argues that Dr. Schifrin's testimony is subject to exclusion because during the period that expert discovery was open, he did not meet the competency requirements of AS § 09.20.185(a)(1).[34] This is so, they contend, because he was then retired, and thus was not licensed to practice at the time he formed and offered his opinions for use in this case.[35] The United States argues that witness competency is assessed at

---

[29] Dr. Schifrin licensing details at 1, Exhibit D, Motion in limine 1, Docket No. 23-4.

[30] Excerpt from expert report at 1, Exhibit A, and excerpt from rebuttal report at 1, Exhibit B, Motion in limine 1, Docket Nos. 23-1 and 23-2.

[31] Dr. Schifrin deposition at 1, 4, Exhibit C, Motion in limine 1, Docket No. 23-3.

[32] Affidavit of Dr. Schifrin at 2, ¶ 3, Exhibit 1, Opposition to motion in limine 1, Docket No. 28-1.

[33] Motion in limine 1 at 4, Docket No. 23.

[34] Id. at 2.

[35] Id. at 3.

the time the witness makes statements for use in a lawsuit.[36] Thus, the United States contends that although Dr. Schifrin reactivated his license sometime after he wrote his reports and after his deposition in this case, such an "after-the-fact attempt at compliance" does not now render him competent.[37] Finally, the United States contends that the court's recent decision in Harrison v. United States, No. 2:19-cv-0017-HRH, 2021 WL 1269119, at *6 (D. Alaska Apr. 6, 2021) – a case that presented an issue nearly identical to that posed here – does not control because it is distinguishable and was wrongly decided.[38]

Plaintiffs oppose.[39] They argue that the United States is improperly attempting to engraft onto AS § 09.20.185(a)(1) a non-existent licensing requirement; that is, they argue that "license" is a broad term and that it does not mean that an expert must be licensed in a way "that expressly authorizes the treatment of patients."[40] Plaintiffs argue that Harrison is not distinguishable and was not wrongly decided.[41]

Under AS § 09.20.185(a), a person may not testify as an expert witness on the issue of the appropriate standard of care in an action based upon professional negligence unless the witness is: "(1) a professional who is licensed in this state or in another state or country; (2) trained and experienced in the same discipline or school of practice as the defendant or in an area directly related to a matter at issue; and (3) certified by a board

---

[36]Id. at 6.

[37]Id. at 2.

[38]Id. at 7-8.

[39]Docket No. 28.

[40]Opposition to motion in limine 1 at 4-5, Docket No. 28.

[41]Id. at 5-13.

ORDER – Motions in Limine - 6 -

recognized by the state as having acknowledged expertise and training directly related to the particular field or matter at issue."

A review of the relevant case law in Alaska shows that the Alaska Supreme Court has not construed the meaning of the term "licensed" as it is used in AS § 09.20.185(a). Nor does the relevant case law show that the Alaska Supreme Court has considered the time at which the licensing requirement in AS § 09.20.185(a) must be satisfied. "In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." Vestar Dev. II, LLC v. Gen. Dynamics Corp., 249 F.3d 958, 960 (9th Cir. 2001) (quoting Lewis v. Tel. Emps. Credit Union, 87 F.3d 1537, 1545 (9th Cir. 1996)).

The Alaska Supreme Court "interpret[s] statutes 'according to reason, practicality, and common sense, taking into account the plain meaning and purpose of the law as well as the intent of the drafters.'" Beistline v. Footit, 485 P.3d 39, 42 (Alaska 2021). Further, the Alaska Supreme Court considers a statute's "language, its purpose, and its legislative history, in an attempt 'to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others' and adopt[s] 'the rule of law that is most persuasive in light of precedent, reason, and policy.'" In re Estate of Maldonado, 117 P.3d 720, 725 (Alaska 2005) (footnotes omitted) (quoting first Alyeska Pipeline Serv. Co. v. DeShong, 77 P.3d 1227, 1234 (Alaska 2003), and, second, Guin v. Ha, 591 P.2d 1281, 1284 n.6 (Alaska 1979)). The Alaska Supreme Court is reluctant to interpret statutes in a manner that produces "absurd results." Shacht v. Kunimune, 440 P.3d 149, 151 (Alaska 2019) (quoting Premera Blue Cross v. State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins., 171 P.3d 1110, 1120 (Alaska 2007)).

In Harrison, this court predicted that the Alaska Supreme Court would hold that the licensing requirement in AS § 09.20.185(a)(1) must be met at the time that the witness testifies. 2021 WL 1269119, at *6. AS § 09.20.185 is a "state rule of 'witness competency.'" Liebsack v. United States, 731 F.3d 850, 857 (9th Cir. 2013). "Competence refers to the condition of the witness at the time he or she is called to testify." Kline v. Ford Motor Co., 523 F.2d 1067, 1069 (9th Cir. 1975). As the court observed in Harrison, AS § 09.20.185 is "plainly focused on whether an expert witness is competent to testify, a clear indication that the licensing requirement must be met at the time the expert testifies." 2021 WL 1269119, at *6 (emphasis in original).

In Harrison, as here, the expert witness whose testimony at issue was also not licensed at the time that he wrote his expert reports and sat for his deposition. Id. But the court stated that those facts would not necessarily prove fatal to plaintiff's case if that witness were to reactive his dental license by the time he testified at trial. Id.

Here, it is undisputed that Dr. Schifrin has now reactivated his medical license. The fact that he authored his opinions and sat for his deposition does not preclude Dr. Schifrin from testifying as an expert at trial. First, and contrary to the United States' contentions, Dr. Schifrin is not an incompetent witness under Stephan P. v. Cecilia A., 464 P.3d 266, 273-74 (Alaska 2020). Stephan P. ruled upon the admissibility of an autistic child's prior statement under the 'excited utterance' exception to the rule against hearsay. Id. at 272. The Alaska Supreme Court did not broadly hold that a trial court must determine whether a witness is competent to testify at the time the witness makes any proffered statement. Rather, the court held that when considering whether a witness is competent to testify under Alaska Evidence Rule 601, the court must determine whether the witness is capable of expressing himself so as to be understood by the court and whether the witness

ORDER – Motions in Limine                                                                          - 8 -

understands his duty to tell the truth. See id. at 273-74 & n.26. The United States does not challenge the competency of Dr. Schifrin's testimony on either of these grounds. Thus, Stephan P. does not support defendant's motion in limine.

Second, the Alaska Supreme Court's prior consideration of the relevant legislative history in furtherance of its interpretation of other terms used in AS § 09.20.185 suggests that the court generally considers the requirements of AS § 09.20.185 to be flexible, not rigid. In Titus v. Dep't of Corrs., 496 P.3d 412, 414-18 (Alaska 2021), the Alaska Supreme Court construed the statutory term "matter at issue" when it considered whether, in a medical malpractice action arising from emergency room medical care, a doctor who was not an emergency room doctor or certified in emergency medicine was qualified to testify as an expert witness about the relevant standard of medical care. In so doing, the court examined the statute's legislative history.

> When AS 09.20.185 was considered by the House Judiciary Committee, legislators discussed the proposed bill's effect, including concerns about limiting the number of experts available to testify in professional negligence cases. One representative mentioned the difficulty of getting experts to testify in rural Alaska. Another mentioned the problem of experts within the same field being hesitant to testify against one another. Addressing these concerns, a bill sponsor explained that the bill required only that an expert "be in the ballpark of the qualifications of that professional trained in the same basic disciplines." The sponsor further explained that the bill requires that "if a professional is going to be judged, then a professional of at least someone in the same general area knowledge and background" should testify about the standard of care.

Id. at 417 (footnotes omitted). After considering this history, the court concluded that a "flexible interpretation of 'matter at issue' [was] consistent with the relevant legislative history of AS [§] 09.20.185" because "[a] bill sponsor stated that experts need only 'be in the ballpark of the qualifications of that professional' who allegedly committed malprac-

ORDER – Motions in Limine - 9 -

tice and that the expert should have the 'same general area knowledge and background.'" Id. at 418.

The court further explained that a "flexible standard is appropriate because the qualification statute addresses medical malpractice scenarios ranging from very simple to very specialized matters. It recognizes that physicians with different qualifications than the defendant may, given the specific facts and circumstances of the case, nonetheless have knowledge about the standard of care in the defendant's field." Id. The court ultimately determined that the proffered expert witness was therefore qualified to testify about the relevant standard of care. Id. at 420. This interpretation is consistent with the Alaska Supreme Court's prior interpretations of Alaska Evidence Rule 702, which generally governs the admissibility of expert testimony. In that context, the Alaska Supreme Court has held that Alaska Evidence Rule 702 is similarly flexible, in that the court has held that there is no licensing requirement for expert witnesses. Martha S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs., 268 P.3d 1066, 1076-77 (Alaska 2012) (discussing Handley v. State, 615 P.2d 627, 629 (Alaska 1980)).

Third, plaintiff's failure to timely disclose Dr. Schifrin's change in licensing status does not violate the Federal Rules of Civil Procedure ("FRCP"s). FRCP 26(e)(2) provides that for any expert whose report must be disclosed under FRCP 26(a)(2)(B), the proffering party has a duty to supplement information in the report and information provided during the expert's deposition by the time the party's pretrial disclosures under FRCP 26(a)(3) are due. FRCP 26(a)(3)(B) provides that disclosures required under this rule must be made at least thirty days before trial, unless the court orders otherwise.

Here, the court has not otherwise modified the time at which FRCP 26(a)(3) disclosures are due.[42] Trial in this case is currently scheduled to commence on May 16, 2022.[43] Because Dr. Schifrin is an expert witness for plaintiffs who stated at his deposition that his license was in retired status, plaintiffs had a duty to appraise the United States of the change to his licensing status at least thirty days before May 16, 2022. However, as this motion – which was filed on December 1, 2021 – demonstrates, the United States is already aware of this change in licensing status, and became aware of this change well before the date called for in FRCP 26(a)(3). Thus, while the United States complains that plaintiffs have failed to make a FRCP 26(e) supplementation regarding Dr. Schifrin's reactivation of his license, the time by which they are required to make such a supplementation has not yet come to pass.

For the foregoing reasons, the court holds that Dr. Schifrin is competent to testify at trial in this case. The United States' first motion in limine is denied.

B. Motion in limine 2: exclusion of birth animation videos and slides.

The United States next moves to exclude plaintiffs' birth animation videos and slides pursuant to FRCP 26(a)(2)(B) and 37(c)(1) and to FRE 701 and 702.[44] On July 1, 2021, plaintiffs produced a "supplemental expert witness disclosure," which listed "[m]edical exhibits for use at trial."[45] The listed exhibits included two video animations

---

[42]Scheduling and Planning Order at 6, Docket No. 9.

[43]Trial Setting Order, Docket No. 21.

[44]Motion in limine 2 at 1, Docket No. 24.

[45]Supplemental expert witness disclosure at 1, 4, Exhibit A, Motion in limine 2, Docket No. 24-1.

ORDER – Motions in Limine - 11 -

and various video animation stills.[46]  One of these videos is comprised of a series of images, text, and medical charts, purportedly in depiction of the birth of the twins in this case.[47]  Similarly, the other video also contains a series of images, medical charts, and text, purportedly depicting fetal hypoxia.[48]  The video animation stills appear to be copies of some of the images that comprise the videos, including depictions of twins in utero, forcep placement, and station progression, among other things.[49]

At the deposition of plaintiffs' expert witness, Dr. Barry Schifrin, he stated that he provided input during a third party's creation of these video exhibits, in March and April 2021, but that he did not personally create the videos.[50]  He stated that the purpose of the videos was to illustrate his original opinions.[51]  These videos were also discussed during the deposition of plaintiff expert witness Dr. Andrew Tucker.[52]  Dr. Tucker stated that he had seen the videos but could not remember if he had seen the stills.[53]  He stated that he was not involved in the creation of the materials and that he did not discuss the videos or

---

[46]Id.

[47]Twin B birth video, Exhibit B1, Notice of filing DVD conventionally, Docket No. 25.

[48]Fetal hypoxia video, Exhibit B2, Notice of filing DVD conventionally, Docket No. 25.

[49]Video animation stills at 1-13, Exhibit C, Motion in limine 2, Docket No. 24-2.

[50]Deposition of Dr. Schifrin at 3-5, Exhibit D, Motion in limine 2, Docket No. 24-3.

[51]Id. at 5.

[52]Deposition of Dr. Tucker at 3, Exhibit E, Motion in limine 2, Docket No. 24-4.

[53]Id. at 3-4.

ORDER – Motions in Limine                                                                                          - 12 -

stills in his reports.[54] In response to questioning by the plaintiffs' attorney, and over defense counsel's form, foundation, and "26(a)(2)(B)" objections, Dr. Tucker stated that the hypoxia video accurately depicted how the hypoxic-ischemic injury occurred in this case.[55] Over those same objections, Dr. Tucker also stated that the twin birth video generally visualized what occurred during the births at issue in this case and what the medical record shows.[56] Finally, Dr. Tucker stated that he thought the purpose of the animations was "just for the jury[57] to see – to explain visually what occurred."[58]

The United States contends that these videos and slides require the testimony of an expert witness in order to lay a foundation for admissibility, but none of plaintiffs' experts reference the animations in their original or expert rebuttal reports.[59] The United States also contends that these items are not rebuttal materials and that they were untimely produced in violation of the case management order, without leave of court.[60]

Plaintiffs oppose on four grounds.[61] First, they argue that the challenged materials are demonstrative aids created by third parties that illustrate the experts' testimony.[62] They

---

[54]Id. at 3-5.

[55]Id. at 7-8.

[56]Id. at 8-9.

[57]This being a Federal Tort Claims Act case against the United States, there will be no jury trial.

[58]Deposition of Dr. Tucker at 10, Exhibit E, Motion in limine 2, Docket No. 24-4.

[59]Motion in limine 2 at 2, 5-6, Docket No. 24.

[60]Id.

[61]Opposition to Motion in limine 2 at 2, Docket No. 29.

[62]Id.

ORDER – Motions in Limine - 13 -

assert that the materials will be proffered as "demonstrative illustrations or visual teaching aids . . . not as substantive evidence having independent probative value."[63] "It is sufficient that the expert or person authenticating the demonstrative aid can attest that it accurately depicts the opinion being offered."[64] Second, they allege that demonstrative aids such as these materials do not fall within the scope of FRCP 26(a)(2)(B).[65] Third, plaintiffs argue that defendants possessed the exhibits prior to any depositions in this case, yet chose not to "substantively cross-examine any deponents about them."[66] And fourth, they argue that exclusion is inappropriate under FRCP 37 because the late production was substantially justified, as the materials did not yet exist in final form, and was harmless, because counsel chose to forego questioning about the items.[67]

"Demonstrative evidence is physical evidence that has no independent probative value, but which illustrates or demonstrates a party's testimony or theory of the case. . . . [It] is simply used as a testimonial aid." GCIU-Emp'r Ret. Fund v. Quad Graphics, Inc., No. 2:16-cv-00100-ODW(AFMx), 2019 WL 7945594, at *4 (C.D. Cal. Oct. 29, 2019). While FRCP 26(a)(2)(B) provides that parties must disclose their expert witnesses' written reports, which must include, among various items, any exhibits that will be used to summarize or support the experts' opinions, demonstrative exhibits that merely support an expert's analysis, or "demonstrate existing expert opinion in the record," do not fall within the scope of FRCP 26(a)(2)(B)'s pretrial disclosure requirements. In re SFPP Right-of-

---

[63]Id. at 5.

[64]Id. at 6.

[65]Id. at 2.

[66]Id.

[67]Id.

ORDER – Motions in Limine							- 14 -

Way Claims, No. SACV 15-00718 JVS (DFMx), 2017 WL 2378363, at *7-*8 (C.D. Cal. May 23, 2017). See also Rodriguez v. Vill. of Port Chester, 535 F. Supp. 3d 202, 217-18 (S.D.N.Y. 2021) (explaining that demonstrative exhibits do not "fit comfortably within the disclosure requirements" of FRCP 26 because they normally do not exist at the outset of a case and stating that there exists no requirement to disclose such materials at a specific time; it is within the trial court's "discretion to require parties to make pretrial disclosures of such materials by specific deadlines").

Plaintiffs' videos and stills may be used by plaintiffs as demonstrative evidence and will be considered by the court to the extent they illustrate the plaintiffs' expert testimony. The videos and stills are not substantive evidence. Here, the deposition testimony shows that the videos and stills at issue contain images, text, and medical records that depict plaintiffs' theory of the events at issue in this case, including certain of its expert witnesses' opinions thereof. And the record shows that while Dr. Schifrin was involved in the creation of these materials, neither he nor Dr. Tucker personally created them. Rather, they were created by a third party. The record therefore shows that they are not substantive evidence, and thus are excluded from FRCP 26(a)(2)(B)'s pretrial disclosure requirements. FRCP 37 sanctions are therefore not warranted.

In consideration of the foregoing, the United States' second motion in limine is denied.

C. Motion in limine 3: exclusion of Dr. Linscott's slides.

The United States next moves to exclude slides prepared by Dr. Luke Linscott, which annotate certain brain imaging studies performed on C.Z. in this case and compare

that imaging to that of a normal brain.[68] The United States brings this motion pursuant to FRCP 26(a)(2)(B) and 37(c)(1).[69]

Dr. Linscott is a pediatric neuroradiologist and a plaintiff expert witness.[70] In the course of completing his work in this case, he created a series of PowerPoint slides titled "Neuroimaging Review."[71] These slides contain various images of C.Z.'s head and brain, along with annotated text and arrow symbols.[72] Counsel for the United States received these slides at the time he received Dr. Linscott's rebuttal report, but Dr. Linscott stated that he could have created the presentation at the time he wrote his original report.[73] Dr. Linscott explained that the PowerPoint presentation "is mostly designed to show the . . . extent of injury on the MRI, the findings we see on diffusion-weighted and T2 imaging. It's also helpful to show the ultrasound. . . . [T]he exhibit is not so much a rebuttal to . . . [the defense radiologist's] statements as it is a way to just show the extent of injury in imaging."[74] At his deposition, Dr. Linscott stated that he created these slides at the same

---

[68]Motion in limine 3 at 1-2, Docket No. 26.

[69]Id.

[70]Dr. Linscott rebuttal report and slides at 3, Exhibit A, Motion in limine 3, Docket No. 26-1.

[71]Id.

[72]Id. at 3-15.

[73]Deposition of Dr. Linscott at 3-4, Exhibit B, Motion in limine 3, Docket No. 26-2.

[74]Id. at 4.

ORDER – Motions in Limine - 16 -

time that he created his rebuttal report, after he had reviewed the report of the United States' radiologist expert witness.[75]

The United States argues that when plaintiffs first produced these slides with Dr. Linscott's rebuttal report, this production was untimely and improperly done without leave of court because the slides are not rebuttal materials and were required to be produced with his original report.[76] Plaintiffs oppose.[77] Plaintiffs contend that the United States' motion is similar to its motion to exclude birth animation videos and correlative slides, and that the slides here at issue – like the birth animation videos and slides – merely constitute visual aids, or demonstrative evidence, that are not subject to the disclosure requirements set forth at FRCP 26(a)(2).[78]

Plaintiffs argue that the slides "merely reflect – and present in graphic form – the opinions Dr. Linscott has properly and timely reported. Dr. Linscott's annotations have no independent probative value apart from his opinions."[79] The United States does not respond to or otherwise challenge plaintiffs' contentions that Dr. Linscott's slides will be used at trial as demonstrative evidence, not as substantive evidence.

As noted previously in the discussion regarding motion in limine 2, FRCP 26(a)(2)(B)'s requirement that parties disclose their expert witnesses' written reports also requires production of any exhibits that will be used to summarize or support the experts' opinions. But, as also noted previously, demonstrative exhibits that merely support an

---

[75]Id. at 3.

[76]Motion in limine 3 at 2, Docket No. 26.

[77]Docket No. 30.

[78]Opposition to motion in limine 3 at 2-4, Docket No. 30.

[79]Id. at 3-4.

ORDER – Motions in Limine - 17 -

expert's analysis, or "demonstrate existing expert opinion in the record," do not fall within the scope of FRCP 26(a)(2)(B)'s pretrial disclosure requirements. In re SFPP Right-of-Way Claims, 2017 WL 2378363, at *7-*8.

Here, Dr. Linscott's slides illustrate his existing opinions "in graphic form" and they may be used as visual, demonstrative aids at trial by plaintiffs, and will be considered by the court to the extent that they illustrate the expert's testimony. Dr. Linscott's slides will not be considered as substantive evidence. They are not subject to the disclosure requirements of Rule 26(a)(2)(B), Federal Rules of Civil Procedure.

The United States' third motion in limine is denied.

D. Motion in limine 4: exclusion of evidence and argument regarding alleged negligence that did not cause injury.

Fourth, the United States moves in limine to exclude evidence and argument regarding any alleged negligence that did not cause the injury here at issue.[80] Defendants argue that any such evidence or argument would be irrelevant, unduly prejudicial, and a waste of time.[81] Plaintiffs do not oppose.[82]

Any evidence or argument regarding negligence that did not contribute to the injury at issue in this case would most likely be irrelevant and thus inadmissible under FRE 401 and 402. Any such evidence or argument would also likely be unduly prejudicial and thus also inadmissible under FRE 403. For these reasons, and because plaintiffs do not oppose the United States' motion, this motion in limine is granted. See Haro v. GGP-Tucson Mall

---

[80]Motion in limine 4 at 1-2, Docket No. 27.

[81]Id. at 2.

[82]Non-opposition to motion in limine 4, Docket No. 31.

ORDER – Motions in Limine                                                                                  - 18 -

LLC, No. CV-17-00285-TUC-JAS, 2019 WL 369269, at *4 (D. Ariz. Jan. 30, 2019) (granting party's motion in limine when opposing party did not oppose motion); Leahy v. Lone Mountain Aviation, Inc., No. 2:10-cv-00082-GMN-PAL, 2013 WL 1819694, at *6 (D. Nev. Apr. 29, 2013) (same).

## Conclusion

Defendant's first, second, and third motions in limine are denied. Defendant's fourth motion in limine is granted.

DATED at Anchorage, Alaska, this 21st day of January, 2022.

/s/   H. Russel Holland
United States District Judge